UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DANTE LAMON TAPLIN,

Plaintiff,

v.

MULTNOMAH COUNTY HEALTH
SERVICES, DR. OLE ERSSON,
MULTNOMAH COUNTY SHERIFF'S
OFFICE, UNITED STATES MARSHALL
SERVICE, DAVE BROWN,

Defendants.

Case No. 3:15-cv-01937-AA

OPINION AND ORDER

AIKEN, District Judge:

Plaintiff Dante Taplin, an inmate formerly in the custody of Multnomah County and appearing pro se, brings suit under 42 U.S.C. § 1983 against defendants Multnomah County Health Department (MCHD), Dr. Ole Ersson, and the Multnomah County Sheriff's Office. Taplin alleges that defendants violated his Fourteenth Amendment rights by refusing to provide adequate medical treatment for his chronic ankle condition. Taplin seeks compensatory damages and injunctive relief requiring defendants to provide ankle surgery.

1   - OPINION AND ORDER

Defendants now move for summary judgment on all claims under Federal Rule of Civil Procedure 56. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

In 2014, Taplin was housed at the Multnomah County Inverness Jail (MCIJ) while in the custody of the U.S. Marshal and awaiting federal charges. First Seale Decl. at 3 (ECF No. 57). On May 8, 2014, Taplin sustained a right ankle injury playing basketball. According to his medical records and self-reports, Taplin has had a history of ankle injuries and resulting instability for several years. *Id.* at 3, 5 & Ex. 1 at 1-7, 17, 24.

After Taplin's injury on May 8, 2014, MCHD staff ordered an x-ray which showed evidence of chronic injuries and an avulsion fracture, with symptoms and treatment similar to those associated with an ankle sprain. *Id.* at 4 & Ex. 1 at 8-10.

On May 9, 2014, Dr. Ersson wrote to Taplin and stated, "Your foot xray is normal. Your ankle xray showed a small avulsion fracture on the inside of the ankle. This is like a bad sprain as no large bones are broken. Avoid weight bearing for a few days. I am scheduling an appointment to discuss this." *Id.* at 4 & Ex. 1 at 12; Ersson Decl. at 2. Dr. Ersson ordered Taplin to be placed on a lower bunk in a lower tier, extra blankets for elevation, and a wheelchair for several days to be followed by crutches. First Seale Decl. at 4 & Ex. 1 at 11, Ersson Decl. at 2.

On May 13, 2014, Taplin had additional x-rays of his ankle, which showed findings similar to those observed on May 8, 2014. First Seale Decl. at 4 & Ex. 1 at 15.

On May 14, 2014, Physician Assistant (PA) Brook Holter examined Taplin. Seale Decl. at 5; Holter Decl. at 2. Holter ordered a CT scan, copies of Taplin's prior x-rays for comparison, and a cane for Taplin to use. Holter Decl. at 2. Holter sought the CT scan to further evaluate

Taplin's ankle and assess the possibility of a talar bone collapse. *Id.* Holter also ordered a cane for Taplin's use and a follow-up appointment. *Id.*; First Seale Decl. at 5 & Ex. 1 at 14.

On May 27, 2014, Taplin had another x-ray of his ankle. The next day, Taplin was transported to Portland Adventist hospital for the CT scan. First Seale Decl. at 5. The reviewing physician found the May 27 x-rays consistent with Taplin's x-rays from May 8 and 13. *Id.* & Ex. 1 at 18-19. The reviewing physician at Portland Adventist found the CT scan compatible with "old" injuries and mild degeneration and not suggestive of avascular necrosis or collapse of the talar bone. *Id.* at 6 & Ex. 1 at 20.

On May 28, 2017, Holter reviewed Taplin's most recent x-rays and also found them consistent with his previous x-rays. Holter Decl. at 2.

On June 4, 2017, Holter reviewed Taplin's CT scan. Holter noted that the scan indicated a possible osteochondral lesion in the tibia, and not the talus, "which would not cause a talar bone collapse." *Id.* Although such an injury "can heal on its own," Holter recommended referral to an orthopedic specialist. *Id.* Dr. Ersson ordered the referral, pending approval by the U.S. Marshals Service. First Seale Decl. at 6 & Ex. 1 at 14.

On July 17, 2014, Taplin was seen by Dr. Ersson, who prescribed a walking boot and a cane. *Id.* at 6 & Ex. 1 at 22. Taplin complained about the efficacy of his pain medication, and Dr. Ersson prescribed Flexeril, a muscle relaxant. Ersson Decl. at 3.

On June 30, 2014, the U.S. Marshals Service approved Taplin's referral to an outside specialist for evaluation. First Seale Decl. at 6-7 & Ex. 1 at 21.

On September 11, 2014, Taplin was seen by Dr. Tomczak, a foot and ankle specialist at Summit Orthopedics. *Id.* at 7. Taplin reported that he had a history of ankle sprains and instability and that he was considering surgical treatment after his impending release from jail.

3 - OPINION AND ORDER

After examining Taplin, Dr. Tomczak concluded, "Given the amount of instability and continued symptoms despite conservative treatment, I believe it is reasonable to proceed with surgical intervention, which would consist of ankle debridement and Brostrom lateral ankle stabilization ...The patient is agreeable to the treatment plan, which can be scheduled at his convenience." *Id.* at 7 & Ex. 1 at 24.

On September 15, 2014, a nurse practitioner requested confirmation that Taplin would be at MCIJ long enough to pursue surgery. The nurse practitioner apparently received a surgery recommendation for Taplin's right ankle from a nurse rather than Taplin's treating providers. First Seale Decl. at 8 & Ex. 1 at 27.

On September 19, 2014, the nurse practitioner forwarded a pre-authorization form to the U.S. Marshals Service seeking authorizing for debridement surgery and scheduled a pre-operative appointment for October 23, 2014 at 9:00 a.m. *Id.* This appointment was canceled when approval for the procedure was not received from the U.S. Marshals Service until later that day. Pl.'s Brief in Opp'n, Ex. 14 (ECF No. 67).

On October 23, 2014, a medical provider indicated that "this surgery is non emergent, a chronic problem ongoing since at least 2012; and is considered elective. Client may proceed with re-evaluation after release from custody." First Seale Decl. Ex. 1 at 27. Holter also reviewed Dr. Tomczak's report and opined that Taplin's condition would "not significantly worsen while [he] is incarcerated" and that the surgery could wait until Taplin was released. Holter Decl. at 3.

On October 24, 2014, Dr. Ersson reviewed Dr. Tomczak's report and determined the surgery to be non-emergent. Ersson Decl. at 3. The same day, he informed Taplin that the "procedure recommend by Dr. Tomczak is elective. This means you will need to get this done

4   - OPINION AND ORDER

after release from Multnomah County custody. In the meantime, our orthopedist recommends continuing to wear your boot for ankle stabilization." First Seale Decl. at 9 & Ex. 1 at 28.

On December 11, 2014, Taplin was transferred to the Federal Correctional Institution at Sheridan (FCI Sheridan). *Id.* at 9. Taplin informed the Bureau of Prisons that surgery for his ankle was recommended, but surgery apparently was not provided. *Id.* Ex. 1 at 32.

On April 23, 2015, Taplin was transferred to Multnomah County custody. He was seen several times for repairs to his walking boot and received orders for a lower bunk on a lower tier, a walking boot, a cane, and extra blankets to elevate his foot. *Id.* at 10 & Ex. 1 at 33-37.

On May 21, 2015, Taplin returned to FCI Sheridan. Medical records note, "Walking boot in place" and "Exam deferred." *Id.* & Ex. 1 at 45.

In August 2015, Taplin returned to Multnomah County custody. Taplin again requested surgery. He was provided a lower bunk, blankets for elevation, a walking boot, and pain medication. *Id.* & Ex. 1 at 49-52. In September 2015, "no change" was noted in Taplin's symptoms. Pl.'s Brief in Opp'n, Ex. 21.

On March 30, 2016, Taplin was transported to a Oregon Department of Corrections' facility. First Seale Decl. at 10 & Ex. 2.

On September 27, 2016, Taplin again returned to Multnomah County custody on new charges. *Id.* He had not received surgery for his ankle. Taplin arrived in custody with a fractured hand, and on October 10, 2016, he had successful surgery at Legacy Emanuel Hospital. *Id.* & Ex. 1 at 56-59.

In October 2016, Taplin received medical shoes, a cane, and right ankle brace. In November 2016, Taplin was permitted his personal shoes with orthotic inserts. *Id.* Ex. 1 at 54-44; Second Seale Decl. at 2 (ECF No. 84).

5   - OPINION AND ORDER

In February 2017, Taplin complained of radiating pain in his right leg and was prescribed medication. Second Seale Decl. at 2.

In August 2017, Taplin was convicted of state law charges and transferred to the custody of the Oregon Department of Corrections at the Coffee Creek Correctional Facility. *See* Pl.'s Notice of Address Change (ECF No. 85).

## DISCUSSION

Taplin alleges claims of deliberate indifference to his serious medical needs as a pretrial detainee under the Fourteenth Amendment. *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1312, *as amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995) (stating that the "convicted inmates' challenge is evaluated under the Eighth Amendment, and the pretrial detainees' challenge is evaluated under the Fourteenth Amendment"); *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs"); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) ("Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.").

Defendants move for summary judgment on grounds that the evidence does not demonstrate deliberate indifference to Taplin's ankle injury. To prevail, defendants must show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the evidence and draw all reasonable inferences in the light most favorable to Taplin. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

To sustain a claim for deliberate indifference to his serious medical needs, Taplin must establish: 1) the existence of "a serious medical need"; and 2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing

6    - OPINION AND ORDER

*Gamble*, 429 U.S. at 104). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (citation omitted). Deliberate indifference under the Fourteenth Amendment is shown when a prison official knew or should have known that a detainee faced a "substantial risk of serious harm" and failed to take reasonable measures to abate the risk. *Farmer*, 511 U.S. at 847; *see also Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070-71 (9th Cir. 2016) (en banc), *cert denied, Los Angeles Cnty. v. Castro*, 137 S. Ct. 831 (2017).[1] Prison officials may demonstrate deliberate indifference by denying, delaying, or intentionally interfering with medical treatment, or by the manner in which they provide medical treatment. *Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Where a prisoner alleges a delay in receiving medical treatment, the delay must have led to "significant harm." *Hallett*, 296 F.3d at 746.

Taplin was not denied medically necessary treatment for his ankle. According to the evidence presented, MCHD staff ordered x-rays the same day Taplin injured his ankle playing basketball. Dr. Ersson also ordered a lower bunk, ice, a wheelchair, and blankets for elevation. Medical providers determined Taplin had chronic ankle instability, and it is undisputed that he received pain medication, a cane and walking boot, further x-rays, a CT scan at an outside

---

[1] The Eighth Amendment standard for deliberate indifference includes a subjective element; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Ninth Circuit has held that deliberate indifference under the Fourteenth Amendment differs from that under the Eighth Amendment and does not require pretrial detainees to establish subjective intent or awareness when alleging failure-to-protect claims. *Castro*, 833 F.3d at 1068-71 (discussing *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)). The Ninth Circuit has not indicated whether the "objective" deliberate indifference test applies to pretrial detainee claims of inadequate medical treatment. Regardless, "any possible divergence" from the subjective Eighth Amendment standard does not affect my decision in this case. *Anderson*, 45 F.3d at 1313, n.1.

7   - OPINION AND ORDER

hospital, and an appointment with an outside orthopedic specialist. As described above and demonstrated by the record, Taplin was examined by staff on a regular basis in 2014 regarding his ankle and other complaints. When he returned to Multnomah County custody in 2015 and 2016, MCHD continued to treat Taplin's ankle conservatively, again providing him with a cane, pain medication, a lower bunk and tier, and a stabilizing walking boot.

More recently, MCHD allowed Taplin to obtain personal shoes and orthotics to help with ankle support and also provided him with a new ankle brace. Second Seale Decl. Ex. 1 at TAP055-0067, TAP0083, TAP0092. While Taplin complained of ankle pain in February 2017, in March he reported that his "main concern" was itching, and in June he was observed to ambulate "without difficulty" and with "no facial grimacing of pain." *Id.* Ex. 1 at TAP0100, TAP0109, TAP0134. The submitted medical evidence does not reflect any worsening of Taplin's ankle condition to suggest deliberate indifference to Taplin's medical needs. *See* First Seale Decl. & Ex. 1; Second Seale Decl. & Ex. 1.[2]

Granted, Dr. Ersson did not approve surgical treatment for Taplin's ankle instability and instead chose to continue with conservative treatment. To establish deliberate indifference on this basis, Taplin must set forth sufficient facts suggesting "that the course of treatment" Dr. Ersson "chose was medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk" to Taplin's health. *Hamby v. Hammond*, 821 F.3d

---

[2] The court requested current information regarding Taplin's expected custody status and recent medical records, in part due to Taplin's claim for injunctive relief. However, Taplin reports that he recently was convicted on state law charges and is now housed at Coffee Creek Correctional Facility, a state institution. Pl.'s Notice of Address Change. Defendants report that Taplin is not expected to return to Multnomah County custody. Defs.' Status Report at 2 (ECF No. 82). Accordingly, Taplin's request for injunctive relief is moot in any event. *Rhodes v. Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2005).

8    - OPINION AND ORDER

1085, 1094 (9th Cir. 2016) (citation omitted). The record does not suggest that Dr. Ersson's choice of conservative treatment was medically unacceptable.

Importantly, the record reflects that Taplin has suffered from ankle instability for many years, dating back to 2004, with similar symptoms. First Seale Decl. at 3, 5 & Ex. 1 at 1-7, 24. No medical provider has opined that surgery was or is medically necessary to avoid further injury; rather, an orthopedic specialist found it "reasonable" for Taplin to pursue surgery "at his convenience." First Seale Decl. Ex. 1 at 24. Holter reviewed the specialist's opinion and found that Taplin's condition would not worsen while in Multnomah County custody and that surgery could wait until Taplin was released. Holter Decl. at 3. An MCHD nurse practitioner likewise reviewed the chart and concluded that the surgery was an elective procedure. First Seale Decl. at 9. Finally, Dr. Ersson reviewed the specialist's report along with the comments of Holter and the nurse practitioner and determined that the "consensus" indicated surgery was elective. *Id.* at 9; Ersson Decl. at 3 ("According to all three of these notes, the surgery was determined to be non-emergent and could be scheduled at Mr. Taplin's convenience once he was out of custody.").

At most, the record reflects a potential difference of opinion between medical providers regarding Taplin's need for surgery. *Hamby*, 821 F.3d at 1094 (a "course of non-surgical treatment pursued by the prison officials" was "not indisputably unconstitutional" and amounted to "possible negligence" at most); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (holding that prison physicians did not act with deliberate indifference when pursuing nonsurgical treatment after one prison physician recommended surgery). Even if Dr. Tomczak's recommendation was "correct" and Dr. Ersson misdiagnosed Taplin's ankle condition, inadequate medical treatment due to negligence or inadvertence does not rise to the level of a constitutional violation. *Gamble*, 429 U.S. at 105-06; *Toguchi v. Chung*, 391 F.3d 1051, 1057

9    - OPINION AND ORDER

(9th Cir. 2004) ("negligence in diagnosing or treating a medical condition" does not support a claim for deliberate indifference) (citation omitted). The fact that Taplin preferred surgery does not render Dr. Ersson's chosen course of treatment deliberately indifferent. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).[3]

To the extent Taplin maintains that he was denied pain medication, the record does not support this claim. Taplin was prescribed pain medication on several occasions and the medical records reflect his lack of compliance with his prescription. Pl.'s Brief in Opp'n, Ex. 9. While Taplin requested a renewed prescription for the muscle relaxant Flexeril in September 2014, the alleged failure to refill a muscle relaxant does not establish a constitutional violation when Taplin requested a refill one time after his prescription expired. *Id.* Ex. 2.

Given the undisputed facts of record, no genuine issue of material fact precludes summary judgment on Taplin's claims of deliberate indifference to his serious medical needs.

## CONCLUSION

For the reasons explained above, defendants' Motion for Summary Judgment (ECF No. 56) is GRANTED.

IT IS SO ORDERED.

DATED this 29th day of September, 2017.

Ann Aiken
United States District Judge

---

[3] Taplin's claims against Multnomah County Sheriff's Office and MCHD also fail because he does not identify a policy, practice or custom to support municipal liability, aside from the "custom" of allowing physicians to determine the course of medical treatment. Pl.'s Brief in Opp'n at 10. However, such a custom did not cause a violation of Taplin's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

10 - OPINION AND ORDER